**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

**CRISTAL NASH, individually and on behalf of all others similarly situated,**

***Plaintiff,***

**v.**

**HEIGHTS FINANCE HOLDING COMPANY,**

***Defendant.***

Case No.:____________________

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Cristal Nash ("Plaintiff") brings this Class Action Complaint against the Defendant, Heights Finance Holding Co., ("Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## JURISDICTION & VENUE

1. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

2. This Court has personal jurisdiction over Defendant because its principal place of business is in this District. Defendant has also purposefully availed itself of the laws, rights, and benefits of the State of South Carolina.

3. Venue is proper under 28 U.S.C §1391 because Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## PARTIES

4. Plaintiff Cristal Nash is a resident citizen of Chesnee, Spartanburg County, South Carolina.

5. Defendant, Heights Finance Holding Co., is a domestic corporation that maintains a principal place of business at 101 N. Main Street, Suite 600, Greenville, Greenville County, South Carolina 29601. Defendant may be served via its registered agent, Corporation Service Company, at 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.

## FACTUAL ALLEGATIONS

6. Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the personally identifiable information ("PII") of approximately 1.2 million individuals, including, but not limited to: names, addresses, phone numbers, emails, Social Security numbers, account details, bank account information (including bank account number and routing number), and driver's license numbers.[1]

7. Defendant is an institution that is significantly engaged in financial activities or significantly engaged in activities incidental to such financial activities, such as: providing

[1] https://www.securityweek.com/heights-finance-data-breach-impacts-at-least-1-2-million-individuals/

personal installment loans, debt consolidation, and auto loans. Defendant requires customers to provide their PII in connection with the transaction.

8. Plaintiff and Class Members (later defined) are current and former customers of Defendant's various services. During their relationship, Plaintiff and Class Members provided Defendant with their PII.

9. Defendant promised to use reasonable technical, administrative, and physical safeguards to protect the PII it collected. These promises were contained in the applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

10. Defendant's published privacy notice provides, "[t]o protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."[2] Furthermore, Defendant's privacy policy also provides, "[t]o prevent unauthorized access to your personal data, maintain data accuracy, and ensure the correct use of information, Heights Finance follows generally accepted industry standards to protect the personal information submitted to us both during transmission and once we receive it."[3]

11. Plaintiff and the Class Members, as customers of Defendant, relied on these representations and on this sophisticated business entity to keep their PII confidential, securely maintained, and to make only authorized disclosures of this information.

12. On, or about, May 7, 2026, Defendant discovered that an unauthorized actor gained access to a cloud-based platform that it uses to store customer data and determined that Plaintiff's and Class Member's personal information—which was entrusted to Defendant on the mutual

---

[2] *See,* How Does Heights Finance Protect My Personal Information? Available here: https://www.heightsfinance.com/pdf/Heights%20Privacy%20Notice%20May%202026.pdf
[3] https://www.heightsfinance.com/online-privacy-policy/

understanding that Defendant would protect it against unauthorized disclosure—was accessed and exfiltrated in a data breach (hereafter referred to as the "Data Breach"). *See* **Exhibit A: Breach Notice**.

13. Omitted from the data breach notice were the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these omitted details have not been explained or clarified to Plaintiff, who retains a vested interest in ensuring that their PII remains protected.

14. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's PII was a known risk to Defendant, and thus, Defendant was on notice that failing to take steps necessary to secure the PII from those risks left the data in a dangerous condition.

15. The Data Breach was a direct result of Defendant's failure to implement an information security program designed to: (a) to ensure the security and confidentiality of customer information; (b) to protect against anticipated threats or hazards to the security or integrity of that information; and (c) to protect against unauthorized access to that information that could result in substantial harm or inconvenience to any customer.

16. An information security program encompasses the administrative, technical, or physical safeguards used to access, collect, distribute, process, protect, store, use, transmit, dispose of, or otherwise handle customer information. Had Defendant implemented an information security program consistent with industry standards and best practices, it could have prevented the Data Breach.

17. Furthermore, the Data Breach was the direct result of Defendant's failure to implement and maintain reasonable data security measures commensurate with the volume and sensitivity of the PII it collected and stored.

18. As a result of the Data Breach, Plaintiff has suffered an actual injury, similar to an intangible harm remedied at common law. Defendant's failure to implement and maintain reasonable data security measures resulted in the unauthorized disclosure of Plaintiff's private information to cybercriminals. The unauthorized disclosure of Plaintiff's PII constitutes an invasion of a legally protected privacy interest, that is traceable to the Defendant's failure to adequately secure the PII in its custody, and has resulted in actual, particularized, and concrete harm to the Plaintiff. The injuries Plaintiff suffered, as described herein, can be redressed by a favorable decision in this matter.

19. Defendant has not provided any assurances that: all data acquired in the Data Breach, or copies thereof, have been recovered or destroyed; or, that Defendant has modified its data protection policies, procedures, and practices sufficient to avoid future, similar, data breaches.

20. Defendant's conduct, as evidenced by the circumstances of the Data Breach, has created a substantial risk of future identity theft, fraud, or other forms of exploitation.

21. The imminent risk of future harm resulting from the Data Breach is traceable to the Defendant's failure to adequately secure the PII in its custody, and has created a separate, particularized, and concrete harm to the Plaintiff.

22. More specifically, the Plaintiff's exposure to the substantial risk of future exploitation caused them to: (i) spend money on mitigation measures like credit monitoring services and/or dark web searches; (ii) lose time and effort spent responding to the Data Breach; and/or (iii) experience emotional distress associated with reviewing accounts for fraud, changing

usernames and passwords or closing accounts to prevent fraud, and general anxiety over the consequences of the Data Breach. The harm Plaintiff has suffered can be redressed by a favorable decision in this matter.

23. Plaintiff faces a substantial risk of future spam, phishing, or other social engineering attacks where their full names, addresses, email addresses, and phone numbers were stolen by a cybercriminal, known for stealing and reselling personal data on the dark web. Names, telephone numbers, and email addresses can be used by cybercriminals to launch social engineering attacks designed to trick individuals into giving away sensitive information. Plaintiff has incurred out-of-pocket costs for purchasing products to protect from phishing, smishing (SMS message), vishing (voice messaging), pretexting, and other social engineering-based attacks.

24. Armed with the PII acquired in the Data Breach, data thieves have already engaged in theft and can, in the future, commit a variety of crimes, including opening new financial accounts, taking out loans, using Plaintiff's information to obtain government benefits, filing fraudulent tax returns, obtaining driver's licenses, and giving false information to police during an arrest.

25. As a result of the Data Breach, Plaintiff suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their PII will be further misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access on the dark web or otherwise; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails

to implement appropriate and reasonable measures to protect the data; (x) anxiety, emotional distress, and loss of privacy; and (xi) an imminent and ongoing risk of additional identity theft and financial fraud for years to come, given that Social Security numbers cannot be changed or replaced.

26. Plaintiff brings this class action lawsuit individually, and on behalf of all those similarly situated, to address Defendant's inadequate data protection practices and for failing to provide timely and adequate notice of the Data Breach.

27. Through this Complaint, Plaintiff seeks to remedy these harms individually, and on behalf of all similarly situated individuals whose PII was accessed during the Data Breach. Plaintiff has a continuing interest in ensuring that personal information is kept confidential and protected from disclosure, and Plaintiff should be entitled to injunctive and other equitable relief.

***This Data Breach Was Preventable***

28. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's PII was a known risk to Defendant, and thus, Defendant was on notice that failing to take steps necessary to secure the PII from those risks left the data in a dangerous condition.

29. Upon information and belief, the Data Breach was a direct result of Defendant's failure to: (i) identify risks and potential effects of collecting, maintaining, and sharing personal information; (ii) adhere to its published privacy practices; (iii) implement reasonable data protection measures for the collection, use, disclosure, and storage of personal information; and/or (iv) ensure its third-party vendors were required to implement reasonable data protection measures consistent with Defendant's data protection obligations.

30. To detect and prevent cyber-attacks, Defendant could and should have implemented the following measures:

Reasonable Safeguards

a. Regularly patch critical vulnerabilities in operating systems, software, and firmware on devices. Consider using a centralized patch management system.

b. Check expert websites (such as www.us-cert.gov) and your software vendors' websites regularly for alerts about new vulnerabilities and implement policies for installing vendor-approved patches to correct problems.

c. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks. Depending on your circumstances, appropriate assessments may range from having a knowledgeable employee run off-the-shelf security software to having an independent professional conduct a full-scale security audit.

d. Scan computers on your network to identify and profile the operating system and open network services. If you find services that you don't need, disable them to prevent hacks or other potential security problems.

e. Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

f. Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email.

g. Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

h. Configure firewalls to block access to known malicious IP addresses.

i. Set anti-virus and anti-malware programs to conduct regular scans automatically.

j. Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

k. Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

l. Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

m. Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

n. Consider disabling Remote Desktop protocol (RDP) if it is not being used.

o. Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

p. Execute operating system environments or specific programs in a virtualized environment.

q. Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

r. Conduct an annual penetration test and vulnerability assessment.

s. Secure your backups.[4]

t. Identify the computers or servers where sensitive personal information is stored.

u. Identify all connections to the computers where you store sensitive information. These may include the internet, electronic cash registers, computers at your branch offices, computers used by service providers to support your network, digital copiers, and wireless devices like smartphones, tablets, or inventory scanners.

v. Don't store sensitive consumer data on any computer with an internet connection unless it's essential for conducting your business.

w. Encrypt sensitive information that you send to third parties over public networks (like the internet) and encrypt sensitive information that is stored on your computer network, laptops, or portable storage devices used by your employees. Consider also encrypting email transmissions within your business.

x. Regularly run up-to-date anti-malware programs on individual computers and on servers on your network.

y. Restrict employees' ability to download unauthorized software. Software downloaded to devices that connect to your network (computers, smartphones, and tablets) could be used to distribute malware.

z. To detect network breaches when they occur, consider using an intrusion detection system.

aa. Create a "culture of security" by implementing a regular schedule of employee training. Update employees as you find out about new risks and vulnerabilities.

bb. Tell employees about your company policies regarding keeping information secure and confidential. Post reminders in areas where sensitive information is used or stored, as well as where employees congregate.

cc. Teach employees about the dangers of spear phishing—emails containing information that makes the emails look legitimate. These emails may appear to come from someone within your company, generally someone in a position of authority. Make it office policy to independently verify any emails requesting sensitive information.

---

[4] *How to Protect Your Networks from Ransomware*, at p.3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (accessed June 11, 2024).

dd. Before you outsource any of your business functions, investigate the company's data security practices and compare their standards to yours.[5]

31. The Federal Trade Commission's Standards for Safeguarding Customer Information (the "Safeguards Rule") 16 CFR §314, requires covered financial institutions to develop, implement, and maintain an information security program with administrative, technical, and physical safeguards designed to protect customer information. The primary requirements of an information security program are:

a. Designate a qualified individual to implement and supervise the information security program.

b. Conduct an assessment to determine foreseeable risks and threats – internal and external – to the security, confidentiality, and integrity of customer information.

c. Design and implement safeguards to control the risks identified through the risk assessment.

d. Regularly monitor and test the effectiveness of the chosen safeguards.

e. Provide staff with security awareness training and schedule regular refreshers.

f. Select service providers with the skills and experience to maintain appropriate safeguards. Include security expectations in vendor contracts, monitor the service provider's work, and provide for periodic reassessments of their suitability.

g. Ensure the information security program remains current. It should reflect changes to operations, changes based on information gained from risk assessments, changes due to emerging threats, changes in personnel, and changes necessitated by other circumstances that may have a material impact on the information security program.

h. Create a written incident response plan.

i. Require the "Qualified Individual" to report to the Board of Directors, in writing, at least annually.[6]

---

[5] *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (accessed June 11, 2024).

[6] See, https://www.ftc.gov/business-guidance/resources/ftc-safeguards-rule-what-your-business-needs-know (last accessed August 7, 2024).

32. Given that Defendant is a financial institution that collected, used, and stored PII, Defendant could and should have identified the risks and potential effects of collecting, maintaining, and sharing personal information.

33. Without identifying the potential risks to the personal data in Defendant's possession, Defendant could not identify and implement the necessary measures to detect and prevent cyberattacks. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of Plaintiff's and the Class Members' PII.

34. Defendant knew and understood unencrypted PII is valuable and highly sought after by cybercriminals seeking to illegally monetize that data. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if a data breach occurred, including the significant cost that would be imposed on Plaintiff and the Class Members as a result.

35. On information and belief, Defendant's data security failures included, but were not limited to, one or more of the following: (a) failure to maintain adequate access controls to prevent unauthorized access to its systems, databases, and cloud-based platforms; (b) failure to implement sufficient encryption for stored personal information, including Social Security numbers and financial account data; (c) failure to conduct regular security assessments, vulnerability testing, and penetration testing of its systems; (d) failure to implement multi-factor authentication for access to sensitive databases and cloud-based platforms; (e) failure to adequately train employees on data security protocols and phishing awareness; (f) failure to timely install security patches and software updates to remedy known vulnerabilities; (g) failure to comply with industry-standard data security frameworks and best practices, including guidelines published by

the National Institute of Standards and Technology (“NIST”) and the Federal Trade Commission ("FTC"); and (h) failure to maintain a reasonable compensating safeguards in the event a third-party application is compromised.

36. The data security measures that Defendant did implement were insufficient to protect the PII entrusted to its care, as evidenced by the fact that unauthorized third parties were able to access and exfiltrate the personal information of approximately 1.2 million individuals.

***Plaintiff and Class Members Sustained Damages in the Data Breach***

37. The invasion of the Plaintiff’s and Class Members’ privacy suffered in this Data Breach constitutes an actual, particularized, redressable injury traceable to the Defendant’s conduct. As a consequence of the Data Breach, Plaintiff and Class Members sustained monetary damages that exceed the sum or value of $5,000,000.00.

38. Additionally, Plaintiff and Class Members face a substantial risk of future identity theft, fraud, or other exploitation where their names, social security numbers, financial data, and dates of birth were targeted by a sophisticated hacker known for stealing and reselling sensitive data on the dark web. The substantial risk of future identity theft and fraud created by the Data Breach constitutes a redressable injury traceable to the Defendant’s conduct.

39. Furthermore, Plaintiff and Class Members face a substantial risk of future spam, phishing, or other attacks designed to trick them into sharing sensitive data, downloading malware, or otherwise exposing themselves to cybercrime, where their names and contact information were acquired in the Data Breach and subsequently released on the dark web. The substantial risk of future exploitation created by the Data Breach constitutes a redressable injury traceable to the Defendant’s conduct.

40. Upon information and belief, a criminal can easily link data acquired in the Data Breach with information available from other sources to commit a variety of fraud related crimes. An example of criminals piecing together bits and pieces of data is the development of "Fullz" packages.[7] With "Fullz" packages, cyber-criminals can combine multiple sources of PII to apply for credit cards, loans, assume identities, or take over accounts.

41. Given the type of targeted attack in this case, the sophistication of the criminal responsible for the Data Breach, the type of PII involved in the Data Breach, hacker behaviors in prior data breaches, the ability of criminals to link data acquired in the Data Breach with information available from other sources, and the fact that the stolen information has been placed, or will be placed, on the dark web, it is reasonable for Plaintiff and the Class Members to assume that their PII was obtained by, or released to, criminals intending to utilize the PII for future identity theft-related crimes or exploitation attempts.

42. The substantial risk of future identity theft, fraud, or other exploitation that Plaintiff and Class Members face is sufficiently concrete, particularized, and imminent that it necessitates the present expenditure of funds to mitigate the risk. Consequently, Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to understand and mitigate the effects of the Data Breach.

43. For example, the Federal Trade Commission has recommended steps that data breach victims take to protect themselves and their children after a data breach, including: (i)

[7] "Fullz" is term used by cybercriminals to describe "a package of all the personal and financial records that thieves would need to fraudulently open up new lines of credit in a person's name." A Fullz package typically includes the victim's name, address, credit card information, social security number, date of birth, bank name, routing number, bank account numbers and more. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm

contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity); (ii) regularly obtaining and reviewing their credit reports; (iii) removing fraudulent charges from their accounts; (iv) closing new accounts opened in their name; (v) placing a credit freeze on their credit; (vi) replacing government-issued identification; (vii) reporting misused Social Security numbers; (viii) contacting utilities to ensure no one obtained cable, electric, water, or other similar services in their name; and (ix) correcting their credit reports.[8]

44. As a consequence of the Data Breach, Plaintiff and Class Members sustained or will incur monetary damages to mitigate the effects of an imminent risk of future injury. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year. The cost of dark web scanning and monitoring services can cost around $180 per year.

45. As a result of the Data Breach, Plaintiff's and Class Members' PII, which has an inherent market value in both legitimate and illegitimate markets, has been damaged and diminished by its unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

46. Personal information is of great value, in 2019, the data brokering industry was worth roughly $200 billion.[9] Data such as name, address, phone number, and credit history has

---

[8] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps

[9] *Column: Shadowy data brokers make the most of their invisibility cloak*, https://www.latimes.com/business/story/2019-11-05/column-data-brokers

been sold at prices ranging from $40 to $200 per record.[10] Sensitive PII can sell for as much as $363 per record.[11]

47. Furthermore, Defendant's poor data security practices deprived Plaintiff and Class Members of the benefit of their bargain. By transacting business with Plaintiff and Class Members, collecting their PII, using their PII for profit or to improve the ability to make profits, and then permitting the unauthorized disclosure of the PII, Plaintiff and Class Members were deprived of the benefit of their bargain.

48. When agreeing to pay Defendant for products or services, consumers understood and expected that they were, in part, paying for the protection of their personal data, when in fact, Defendant did not invest the funds into implementing reasonable data security practices. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

49. Through this Complaint, Plaintiff seeks redress individually, and on behalf of all similarly situated individuals, for the damages that resulted from the Data Breach.

## **CLASS ALLEGATIONS**

50. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

---

[10] *In the Dark*, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/

[11] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

51. Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

52. The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class**

All individuals residing in the United States whose PII was accessed and acquired by an unauthorized party as a result of a data breach that occurred on, or about, May 7, 2026, as reported by Defendant (the "Class").

**South Carolina Subclass**

All individuals residing in South Carolina whose PII was accessed and acquired by an unauthorized party as a result of a data breach that occurred on, or about, May 7, 2026, as reported by Defendant (the "South Carolina Subclass").

53. Collectively, the Class and South Carolina Subclass are referred to as the "Class" or "Class Members."

54. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

55. Plaintiff reserves the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

56. Numerosity: The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. While the exact number of Class Members is

unknown to Plaintiff at this time and such number is exclusively in the possession of Defendant, upon information and belief, 1.2 million individuals were impacted in Data Breach.

57. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. The questions of law and fact common to the Class that predominate over questions which may affect individual Class Members, includes the following:

a. Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;
b. Whether Defendant had a duty not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;
c. Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;
d. Whether Defendant required its third-party vendors to adequately safeguard the PII of Plaintiff and Class Members;
e. When Defendant actually learned of the Data Breach;
f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;
g. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;
h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;
i. Whether Defendant adequately addressed and fixed the practices, procedures, or vulnerabilities which permitted the Data Breach to occur;
j. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;
k. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of the Data Breach.

58. Typicality: Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

59. Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

60. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

61. Superiority and Manageability: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

62. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

63. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

64. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

65. Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of the Class, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

66. Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

67. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant failed to timely notify the Plaintiff and the Class of the Data Breach;
b. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, sharing, storing, and safeguarding their PII;
c. Whether Defendant's (or their vendors') security measures to protect its network were reasonable in light of industry best practices;
d. Whether Defendant's (or their vendors') failure to institute adequate data protection measures amounted to negligence;
e. Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII;
f. Whether Defendant made false representations about their data privacy practices and commitment to the security and confidentiality of customer information; and
g. Whether adherence to FTC recommendations, industry standards, and best practices for protecting personal information would have reasonably prevented the Data Breach.

## CAUSES OF ACTION
**(*On behalf of Plaintiff and the Classes*)**

### COUNT 1: NEGLIGENCE

68. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

69. Defendant requires their customers, including Plaintiff and Class Members, to submit PII in the ordinary course of providing products or services.

70. Defendant gathered and stored the PII of Plaintiff and Class Members as part of its business of soliciting its services to customers. Plaintiff and Class Members entrusted Defendant with their PII with the understanding that Defendant would adequately safeguard their information.

71. Defendant had full knowledge of the types of PII it collected and the types of harm that Plaintiff and Class Members would suffer if that data was accessed and exfiltrated by an unauthorized third-party.

72. By collecting, storing, sharing, and using the Plaintiff's and Class Members' PII for commercial gain, Defendant assumed a duty to use reasonable means to safeguard the personal data it obtained.

73. Defendant also had a duty to employ reasonable security measures under the Federal Trade Commission's Standards for Safeguarding Customer Information (the "Safeguards Rule") 16 CFR §314.

74. Defendant is a financial institution and has a duty to develop, implement, and maintain a written information security program designed to protect customer information. The information security program must be appropriate to the size and complexity of the business, the nature and scope of business activities, and the sensitivity of the information at issue.

75. Defendant's information security program must be designed to: (a) ensure the security and confidentiality of customer information; (b) protect against anticipated threats or hazards to the security or integrity of that information; and (c) protect against unauthorized access to that information that could result in substantial harm or inconvenience to any customer.

76. Defendant's duty included a responsibility to ensure it: (i) implemented reasonable administrative, technical, and physical measures to detect and prevent unauthorized intrusions into its information technology and/or cloud environments; (ii) contractually obligated its vendors to adhere to the requirements of Defendant's privacy policy; (iii) complied with the Safeguards Rule and other applicable statutes and data protection obligations; (iv) conducted regular privacy assessments and security audits of Defendant's and/or its vendors' data processing activities; (v)

regularly audited for compliance with contractual and other applicable data protection obligations; and, (vi) provided timely notice to individuals impacted by a data breach event.

77. Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII that Defendant was no longer required to retain.

78. Defendant had a duty to notify Plaintiff and the Class of the Data Breach promptly and adequately. Such notice was necessary to allow Plaintiff and the Classes to take steps to prevent, mitigate, and repair any fraudulent usage of their PII.

79. Defendant violated its common law duty by failing to adequately secure and maintain the confidentiality of Plaintiff and Class Members information. Defendant further violated the Safeguards Rule, and other state consumer protection statutes by failing to implement an information security plan or use reasonable security measures to protect PII. Defendant's violations of the Safeguards Rule, and other state consumer protection statutes, constitutes negligence *per se.*

80. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant includes, but are not limited to, the following:

a. Failing to conduct an assessment to determine foreseeable risks and threats – internal and external – to the security, confidentiality, and integrity of customer information.

b. Failing to design and implement safeguards to control the risks identified through the risk assessment.

c. Failing to implement organizational controls, including a patch management policy to track and manage updates and patches for known vulnerabilities.

d. Failing to have defined periods when patches must be installed and/or an automated means of determining what patches are needed, where they are needed, and the status of current patch levels by location.

e. Failing to encrypt personally identifying information in transit and at rest.

f. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII.

g. Failing to adequately monitor the security of their networks and systems.

h. Allowing unauthorized access to PII.

i. Failing to detect in a timely manner that PII had been compromised.

j. Failing to remove former customers' PII it was no longer required to retain.

k. Failing to timely and adequately notify Plaintiff and Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

l. Failing to implement data security practices consistent with Defendant's published privacy policies.

81. Plaintiff and Class Members were within the class of persons the Safeguards Rule was intended to protect and the type of harm that resulted from the Data Breach was the type of harm the statue was intended to guard against.

82. The injuries resulting to Plaintiff and the Class because of Defendant's failure to use adequate security measures was reasonably foreseeable.

83. Plaintiff and the Class were the foreseeable victims of a data breach. Defendant knew or should have known of the inherent risks in collecting and storing PII, the critical importance of protecting that PII, and the necessity of updating, patching, or fixing critical vulnerabilities in its network.

84. Plaintiff and the Class had no ability to protect the PII in Defendant's possession. Defendant was in the best position to protect against the harms suffered by Plaintiff and the Class as a result of the Data Breach.

85. But for Defendant's breach of duties owed to Plaintiff and the Class, their PII would not have been compromised. There is a close causal connection between Defendant's failure to implement reasonable security measures to protect the PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class.

86. As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; (ix) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PII; (x) anxiety, emotional distress, and loss of privacy; and (xi) an imminent and ongoing risk of additional identity theft and financial fraud for years to come, given that Social Security numbers cannot be changed or replaced.

87. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

88. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to: (i) strengthen its data protection procedures; (ii) patch all critical vulnerabilities; and (iii) to provide adequate credit monitoring to all affected by the Data Breach.

## COUNT 2: BREACH OF IMPLIED CONTRACT

89. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

90. Defendant requires their customers, including Plaintiff and Class Members, to submit PII in the ordinary course of providing products or services. By requiring Plaintiff and Class Members to provide their personal information—including names, Social Security numbers,

and financial account information—as a condition of obtaining Defendant's services, an implied contract was formed between Defendant and Plaintiff and Class Members.

91. Under the implied contract, Defendant undertook an obligation to safeguard Plaintiff's and Class Members' PII by implementing and maintaining reasonable data security measures to protect against unauthorized access, disclosure, and misuse. The existence of this implied obligation is supported by, and may be inferred from, the following facts and circumstances:

a. Plaintiff and Class Members provided highly sensitive PII to Defendant, including Social Security numbers and financial account information, as a condition of their relationship with Defendant;

b. When an individual provides such sensitive PII to a company in connection with a commercial or contractual relationship, the natural and just interpretation of the parties' conduct supports the conclusion that the recipient of that information has implicitly agreed to safeguard it from unauthorized access and disclosure;

c. Defendant collected and maintained the PII for its own business purposes and derived value from its possession of that information;

d. Plaintiff and Class Members reasonably expected that Defendant would protect their PII from unauthorized access, and they did not intend or expect Defendant to allow unauthorized third parties to access that data; and

e. An implicit agreement to safeguard the PII was necessary to effectuate the underlying transaction or relationship between Plaintiff, Class Members, and Defendant;

92. Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of an expressed or implied promise to implement reasonable data protection measures.

93. Plaintiff and Class Members fully and adequately performed their obligations under the implied contract with Defendant.

94. Defendant breached the implied contract by failing to implement and maintain reasonable data security measures to protect the PII of Plaintiff and Class Members from unauthorized access, theft, and misuse. Specifically, Defendant's breaches include, but are not

limited to: (a) failing to implement adequate access controls, encryption, monitoring, and intrusion detection and prevention systems; (b) failing to maintain data security measures commensurate with the sensitivity and volume of the PII it collected and stored; (c) allowing unauthorized third parties to access and exfiltrate the PII of approximately 1.2 million individuals; (d) unreasonably delaying notification to Plaintiff and Class Members of the Data Breach, thereby depriving them of the opportunity to take timely protective measures; and (e) failing to implement reasonable compensating controls in the event a third party application or cloud-based environment was compromised.

95. As a direct and proximate result of the Defendant's breach of an implied contract, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; (ix) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PII; (x) anxiety, emotional distress, and loss of privacy; and (xi) an imminent and ongoing risk of additional identity theft and financial fraud for years to come, given that Social Security numbers cannot be changed or replaced.

**COUNT 3: BREACH OF EXPRESS CONTRACT**

96. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

97. Defendant's Privacy Policy and Privacy Notice (the "Privacy Representations"), which were published or made available to Plaintiff and Class Members at or before the time they provided their PII, constituted an express contract between Defendant and Plaintiff and Class Members regarding the protection of their PII.

98. Defendant's Privacy Representations expressly stated that Defendant would use "computer safeguards and secured files," and that Defendant would follow "generally accepted industry standards" to protect the personal information of Plaintiff and Class Members from unauthorized access, disclosure, or misuse.

99. By their own terms, Defendant's Privacy Representations applied to and were binding upon individuals who used Defendant's services, accessed Defendant's website, or submitted information to Defendant. Plaintiff and Class Members manifested their assent to the terms of the Privacy Representations by providing their PII to Defendant in connection with the applicable transactions.

100. The terms of Defendant's Privacy Representations were sufficiently definite to form an enforceable contract. Defendant expressly committed to using reasonable computer safeguards and following industry standards, thereby establishing an ascertainable standard of conduct.

101. Defendant received valid consideration for its contractual promises in the form of Plaintiff's and Class Members' PII, the economic value of the business relationship, and/or direct monetary payments for Defendant's products/services.

102. Defendant breached the express contract by failing to implement and maintain the data security measures it expressly represented it would use.

103. As a direct and proximate result of the Defendant's breach of an express contract, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; (ix) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PII; (x) anxiety, emotional distress, and loss of privacy; and (xi) an imminent and ongoing risk of additional identity theft and financial fraud for years to come, given that Social Security numbers cannot be changed or replaced.

**COUNT 4: UNJUST ENRICHMENT**

104. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

105. Plaintiff brings this Count in the alternative to the breach of contract counts above. In the event the Court determines that no enforceable contract—express or implied—exists between Plaintiff, Class Members, and Defendant, Plaintiff asserts this claim for unjust enrichment.

106. Plaintiff and Class Members conferred a benefit upon Defendant by providing their PII, including their names, Social Security numbers, and financial account information. Plaintiff and Class Members also conferred a benefit upon Defendant in the form of monetary payments

for Defendant's products or services, a portion of the value of which was attributable to Defendant's representations that it would maintain reasonable data security.

107. Defendant knew that Plaintiff and Class Members conferred a benefit upon it. Defendant appreciated and knowingly accepted the benefit of receiving and maintaining the PII of Plaintiff and Class Members. Defendant used and derived value from the PII for its own business purposes, including but not limited to maintaining and operating its business, processing transactions, managing accounts, targeting marketing, and fulfilling regulatory requirements

108. By collecting the PII, Defendant was obligated to safeguard and protect such information, to keep such information confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been compromised or stolen.

109. Under the circumstances, it would be inequitable for Defendant to retain the benefit of Plaintiff's and Class Members' PII—and the economic value derived therefrom—without providing the data security protections that were integral to the exchange. Defendant accepted Plaintiff's and Class Members' PII with the understanding that it would be safeguarded, yet Defendant failed to maintain reasonable data security measures, resulting in the Data Breach and the compromise of the PII of approximately 1.2 million individuals.

110. Defendant failed to secure Plaintiff's and Class Members' PII and, therefore, it would be unjust for Defendant to retain any of the benefits that Plaintiff and Class Members conferred upon Defendant without paying value in return.

111. As a result of Defendant's unjust enrichment, Plaintiff and Class Members have suffered damages and are entitled to restitution in an amount to be determined at trial, representing the value of the benefit unjustly retained by Defendant, including but not limited to: (a) the economic value of the PII that Defendant collected and failed to protect; (b) the portion of any

payments, consideration, or value provided by Plaintiff and Class Members that was attributable to Defendant's data security obligations; and (c) the costs incurred by Plaintiff and Class Members to mitigate the harms caused by the Data Breach.

**COUNT 5: UNFAIR AND DECEPTIVE TRADE PRACTICES**

112. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

113. Plaintiff and Class Members are consumers of Defendant's products and services. Defendant requires its customers, including Plaintiff and Class Members, to submit PII in the ordinary course of providing products or services.

114. Defendant gathered and stored the PII of Plaintiff and Class Members as part of its business of soliciting its services to customers. Plaintiff and Class Members entrusted Defendant with their PII with the understanding that Defendant would adequately safeguard their information.

115. Under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair or deceptive trade practices that affect commerce. Deceptive practices, as interpreted by the FTC, include failing to adhere to a company's own published privacy policies. Such behavior by Defendant also constitutes a false, misleading, or deceptive act under state law.

116. Defendant violated the consumer protection statute by failing to adhere to its own Privacy Representations regarding the confidentiality and security of Plaintiff's and Class Members' information. Defendant further violated the state consumer protection statute by failing to use reasonable measures to protect PII.

117. Defendant's conduct created a likelihood of confusion or misunderstanding regarding its actual data privacy and security practices. Defendant promised to protect Plaintiff's and Class Members' PII via its privacy policies, but allowed the unauthorized access to this

personal and protected health information; Defendant failed to disclose material facts that the Plaintiff's and Class Members' PII would be disclosed to unauthorized third parties; Defendant failed to obtain Plaintiff's and Class Members' consent in transmitting their PII to a third party; and knowingly violated industry and legal standards regarding the protection of Plaintiff's and Class Members' PII.

118. Defendant's unfair or deceptive acts affected public interests, including those of Plaintiff and Class Members. Defendant knew or should have known that it was likely to mislead its customers who were acting reasonably. Defendant engaged in unfair or deceptive practices by breaching its duties to provide technical and organizational data security policies, procedures, and practices. Defendant's failure to adhere to its published privacy policies and procedures is offensive to established public policy and is substantially injurious to consumers as evidenced by the massive Data Breach.

119. Had Plaintiff and Class Members known Defendant would not follow its own published security practices they would not have purchased (or continued to purchase) Defendant's products or services. Defendant's deceptive acts, as described herein, proximately caused Plaintiff and Class Members damages.

120. As a direct and proximate result of the Defendant's conduct, Plaintiff and Class Members suffered damages including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) mitigation costs and expenses; and (vii) attorneys' fees and court costs.

121. Plaintiff alleges that Defendant's data security measures remain inadequate. Plaintiff will continue to suffer injury as a result of the compromise of their PII and remain at

imminent risk that further compromises of their PII will occur in the future.

122. Plaintiff and Class Members have suffered irreparable injury, and will continue to suffer injury in the future, as a result of Defendant's deceptive trade practices, which places Plaintiff and Class Members at imminent risk that further compromises of their PII will occur in the future. As such, the remedies available at law are inadequate to compensate for that injury. Accordingly, Plaintiff and Class Members also seek to obtain a judgment declaring, among other things, the following:

a. Defendant continues to owe a legal duty to secure PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes.

b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiff and Class Members' PII.

123. The Court also should issue corresponding prospective injunctive relief requiring that Defendant employs adequate data protection practices consistent with law and industry standards.

124. The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Among other things, if another massive data breach occurs, Plaintiff will likely be subjected to fraud, identity theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

125. The issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by encouraging Defendant to take necessary action to prevent another data breach, thus eliminating the additional injuries that would result to Plaintiff and the multitude of individuals whose PII would be at risk of future

unauthorized disclosures.

126. As a result of the Defendant's false, misleading, or deceptive acts, regarding its data security practices, the consuming public in general, Plaintiff, and Class Members suffered injuries including, but not limited to, the future and continued risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PII.

127. Plaintiff and Class Members are entitled to attorneys' fees, costs, and injunctive relief requiring Defendant to: (i) strengthen its data protection procedures; (ii) implement strong authentication mechanisms for accessing cloud services; and (iii) to provide adequate dark web monitoring and/or credit monitoring to all affected by the Data Breach.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Class alleged herein, respectfully requests that the Court enter judgment as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff(s) as the representatives for the Class and counsel for Plaintiff(s) as Class Counsel;

B. For an order declaring the Defendant's conduct violates the statues and causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. Ordering Defendant to pay for lifetime credit monitoring and dark web scanning services for Plaintiff and the Class;

E. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F. For prejudgment interest on all amounts awarded;

G. For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

H. For injunctive relief as pleaded or as the Court may deem proper; and

I. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: Wednesday, August 19, 2026. Respectfully Submitted,

*/s/Paul J. Doolittle*

Paul J. Doolittle (SC Fed Bar No. 6012)
Marina Wellman*
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
T: (803) 222 – 2222
E: paul.doolittle@poulinwilley.com
marina.wellman@poulinwilley.com
cmad@poulinwilley.com